UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| TIMOTHY A. TURNER, | : | |
| | : | Civ. No. 15-5942 (RBK) (AMD) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| JANE DOE, et al., | : | |
| | : | |
| Defendants. | : | |

**ROBERT B. KUGLER, U.S.D.J.**

## I. INTRODUCTION

Plaintiff, Timothy A. Turner, is a federal prisoner currently incarcerated at FCI Schuylkill in Minersville, Pennsylvania. He is proceeding *pro se* with an amended complaint against Defendant William Gonzalez alleging a violation of his Fifth Amendment equal protection rights in his prison employment. (ECF No. 7). Currently before the Court is Defendant Gonzalez's Motion for Summary Judgment (ECF No. 70) and Plaintiff's Motion for Default Judgment (ECF No. 71). For the following reasons, Defendant Gonzalez's Motion for Summary Judgment is granted and Plaintiff's Motion for Default Judgment is denied.

## II. BACKGROUND

### A. Factual Background

At all times relevant to the allegations in the amended complaint, Plaintiff was incarcerated at FCI Fairton in New Jersey. (*See* ECF No. 70-2 at p. 1). Plaintiff, an African-American inmate, worked in the electronics factory (the "Factory') that was part of the Federal Prison Industries ("UNICOR") program from October 2010 to September 2014. (*See id.* at p. 2; ECF No. 75-1 at p. 1). During this time, the Factory had five cable operations that manufactured cable assemblies. (*See* ECF No. 70-2 at p. 2).

According to Defendant William Gonzalez, a UNICOR foreman, Plaintiff held the position of electronics assembler and was training to become a clerk on Cable Operation No. 2. (*See id.* at pp. 2-3). To perform the duties of a clerk, an inmate requires access to a software license, which costs approximately $3,000. (*See id.* at p. 2). On September 29, 2014, Defendant Gonzalez informed Plaintiff that due to financial difficulties, the Factory could not afford to obtain a software license for him to become a clerk. (*See* ECF No. 70-2 at pp.3-4). When Plaintiff learned of the decision, he stated that he was quitting and never returned to work. (*See id.* at p. 5). On October 9, 2014, former Defendant Donna Scott, the UNICOR factory manager, completed the paperwork to terminate Plaintiff because he had not appeared at work since September 29, 2014. (*See id.*). On October 13, 2014, former Defendant Scott reassigned another inmate who already had the requisite software license to serve as clerk for Cable Operation No. 2. (*See id.* at pp. 5-6).

Plaintiff disputes Defendant Gonzalez's factual narrative. Plaintiff contends that from May to September 2014, he held the position of clerk on Cable Operation No. 2. (*See* ECF No. 75 at p. 3). While Plaintiff agrees that Defendant Gonzalez, who is Hispanic, informed him that he was being removed from his position due to a reduction of jobs, Plaintiff asserts that he was actually replaced by a Hispanic inmate because of race discrimination. (*See id.* at p. 7). Plaintiff further claims that when he asked Defendant Gonzalez for the reason why he was being replaced and requested to transfer to another department, Defendant Gonzalez supposedly became irate, used a marker to black out Plaintiff's written transfer request, and threatened to assign Plaintiff to pick up trash. (*See id.* at p. 8).

### B.     Procedural History

On August 3, 2015, Plaintiff filed a civil complaint pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (*See* ECF No. 1). On September 15, 2015, the Court granted Plaintiff's application to proceed *in forma pauperis* and

dismissed the complaint without prejudice for failure to state a claim for relief pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). (*See* ECF No. 3). Plaintiff filed an amended complaint on October 6, 2015, and the Court permitted the amended complaint to proceed past screening as to the claims against Defendants Scott and Gonzalez. (*See* ECF No. 5).

The Clerk's Office transmitted the U.S. Marshals Service Forms 285 on December 3, 2015, and the Marshals Service received the returned forms on December 16, 2015. (*See* ECF Nos. 6 & 8). The Clerk's Office issued summonses to Defendants Scott and Gonzalez, on December 16, 2015. (ECF No. 9). However, the Clerk's Office never received a completed summons or waiver of service from the Marshals Service with regard to Defendant Gonzalez.

On December 19, 2016, this Court granted summary judgment as to Defendant Scott. (*See* ECF No. 42). On March 17, 2017, the Marshals Service returned an executed summons for Defendant Gonzalez showing service. (*See* ECF Nos. 49 & 50). On March 30, 2017, this Court denied Plaintiff's first Motion for Default Judgment against Defendant Gonzalez as premature. (*See* ECF Nos. 56 & 57). Defendant Gonzalez filed an answer to Plaintiff's amended complaint on May 30, 2017. (*See* ECF No. 61). On October 27, 2017, Defendant Gonzalez filed a Motion for Summary Judgment that is presently before this Court (ECF No. 70). On November 3, 2017, Plaintiff filed a second Motion for Default Judgment against Defendant Gonzalez, which is also currently before this Court (ECF No. 71).

### III.     STANDARD OF REVIEW

The Court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict

for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Az. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Anderson*, 477 U.S. at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in its favor. *Id.* at 255; *Matsushita*, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The non-moving party must at least present probative evidence from which the jury might return a verdict in his favor. *Id.* at 257. Where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the movant is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV.   DISCUSSION

### A.   Motion for Summary Judgment

Defendant Gonzalez moves for summary judgment on the basis that there is no *Bivens* remedy for Plaintiff's equal protection claim in light of the Supreme Court's recent decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). (*See* ECF No. 70 at pp. 7-19). He argues that Plaintiff's equal protection claim is a new context that would expand the *Bivens* remedy beyond the three specific contexts recognized by the Supreme Court. (*See id.* at pp.8-15). Alternatively, Defendant Gonzalez asserts he is entitled to qualified immunity. (*See id.* at pp. 20-31).

4

### 1. Overview of *Bivens*

While 42 U.S.C. § 1983 creates a remedy for monetary damages for individuals injured by persons acting under color of state law, "Congress did not create an analogous statute for federal officials." *Ziglar*, 137 S. Ct. at 1854. Rather, the Supreme Court decided in *Bivens* that, "even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures." *Id.* In *Bivens*, the Supreme Court created an implied cause of action based on a violation of the Fourth Amendment by federal officers. *Bivens*, 403 U.S. at 397.

Since *Bivens*, the Supreme Court has recognized implied causes of action in two additional cases involving constitutional violations: *Davis v. Passman*, 442 U.S. 228 (1979) and *Carlson v. Green*, 446 U.S. 14 (1980). In *Davis*, the Supreme Court held that the Fifth Amendment Due Process Clause gave a congressional employee a damages remedy for gender discrimination. 442 U.S. at 248-49. In *Carlson*, the Supreme Court held that the Eighth Amendment Cruel and Unusual Punishments Clause provided a prisoner's estate with a damages remedy against federal jailers for failure to provide adequate medical treatment to the prisoner. 446 U.S. at 14, 19. "These three cases—*Bivens, Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar,* 137 S. Ct. at 1855.

Over time, the Supreme Court's approach to recognizing implied causes of action under *Bivens* changed, and "the Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857. There is a multi-step framework for determining whether a constitutional violation by a federal official establishes a cognizable *Bivens* claim. First, the court must determine whether the case presents a "new context" for *Bivens* cases. If it does, the court must determine whether alternative remedies exist. Finally, the court must determine

whether there are special factors counselling against extending the *Bivens* remedy to the new cause of action.

### 2. A New *Bivens* Context

In *Ziglar*, the Supreme Court defined the analysis for "determining whether a case presents a new *Bivens* context" as follows:

> If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1859-60.  In considering whether there is a new *Bivens* context, the Supreme Court has advised that "even a modest extension is still an extension" and that even small differences can be "meaningful ones" that would create a new *Bivens* context, although some may "be so trivial that they will not suffice to create new *Bivens* context." *Id.* at 1864, 1865.

In the case before this Court, Plaintiff, an African-American federal prisoner, alleges that Defendant Gonzalez discriminated against him on the basis of his race by replacing him with a Hispanic worker in violation of the Fifth Amendment.  The Court finds this to be a new *Bivens* context as none of the three prior *Bivens* cases addressed federal prisoners in the prison-employment context.  This case does not fall within the confines of *Bivens* itself, which concerned a Fourth Amendment search and seizure claim.  Although *Davis* addressed a Fifth Amendment discrimination claim, it concerned a congressional employee.  Unlike the plaintiff in *Davis*, Plaintiff is a federal prisoner and is therefore not an "employee" within the meaning of federal

6

employment protection statutes. *See, e.g.*, *Wilkerson v. Samuels*, 524 F. App'x 776, 779 (3d Cir. 2013) (per curiam) ("It is well established that a prisoner is not an employee under the Fair Labor Standards Act (FLSA), because the relationship is not one of employment, but arises out of the prisoner's status as an inmate."). While *Carlson* extended the *Bivens* remedy to prisoners, it only did so for Eighth Amendment denial of medical care claims.

Therefore, the Court finds that Plaintiff's Fifth Amendment claim is a new *Bivens* context, as it is meaningfully different from *Bivens*, *Davis*, and *Carlson*. *See Alexander v. Ortiz*, No. 15-6981, 2018 WL 1399302, at *4-5 (D.N.J. Mar. 20, 2018) (finding that Fifth Amendment prison-employment discrimination claim presented a "new context" for *Bivens* cases). Accordingly, the Court now considers whether there are special factors present that counsel hesitation in this Court recognizing a *Bivens* remedy.

### 3.     Alternative Remedy

The next question the Court must ask is "'whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Vanderklok v. United States*, 868 F.3d 189, 200 (3d Cir. 2017) (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)). "[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Ziglar*, 137 S. Ct. at 1858.

Here, Plaintiff does not have an alternative remedial process for protecting his interest. *See Alexander*, 2018 WL 1399302, at *6 (finding no alternative remedy available for damages for a Fifth Amendment violation in the prison-employment context). For instance, an injunction prospectively requiring prison officials to comply with UNICOR's non-discrimination policy[1]

---

[1] *See* 28 C.F.R. § 345.35(a) ("[UNICOR] does not discriminate on the bases of race, color, religion, ethnic origin, age, or disability."); BOP Program Statement 8120.03 at 2 (Feb. 23, 2017)

would not compensate Plaintiff for lost wages. Additionally, Plaintiff's claims do not lie within the "core of habeas" such that a habeas corpus petition would be appropriate. *See Preiser v. Rodriguez*, 411 U.S. 475, 487–88 (1973).

Moreover, Plaintiff is unable to bring his claim for damages under Title VII of the Civil Rights Act of 1964, the Fair Labor Standards Act ("FLSA"), the Age Discrimination in Employment Act ("ADEA"), the Equal Pay Act ("EPA"), or the Rehabilitation Act as he is not an "employee" within the meaning of those statutes. *See Wilkerson v. Samuels*, 524 F. App'x 776, 779 (3d Cir. 2013) (per curiam); *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) ("We conclude that plaintiff is not an 'employee' under either Title VII or the ADEA because his relationship with the Bureau of Prisons, and therefore, with the defendants, arises out of his status as an inmate, not an employee."); *see also* 1 Charles R. Richey, Manual on Employment Discrimination, § 3:26 (2018). Plaintiff also may not rely on the Federal Tort Claims Act ("FTCA") to sue the United States instead of his supervisor because federal constitutional violations, such as those claimed by Plaintiff, are not cognizable under the FTCA. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 477-78 (1994) (holding 28 U.S.C. § 1346(b) does not provide a cause of action for constitutional torts).

Further, the Inmate Accident Compensation Act ("IACA"), 18 U.S.C. § 4126, does not provide a remedy for Plaintiff in this particular situation. The IACA permits UNICOR to compensate inmates or their dependents for injuries sustained in the course of their employment. *See* 18 U.S.C. § 4126; 28 C.F.R. § 301.101(a)-(b). Cases applying the IACA have limited it to compensation for physical injuries and illnesses and have analogized it to civilian workers' compensation laws. *See United States v. Demko*, 385 U.S. 149, 151-52 (1966); *Dial v. Murphy*,

---

("[UNICOR] will not discriminate on the bases of race, color, religion, ethnic origin, age, or disability.").

54 F.3d 776 (6th Cir. 1995); *Thompson v. U.S. Fed. Prison Indus.*, 492 F.2d 1082, 1083 (5th Cir. 1974).

The lack of an alternative remedy for damages, however, does not necessarily mean that the Court should extend a *Bivens* remedy to this new context.  The Court must still "'make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed ... to any special factors counselling hesitation before authorizing a new kind of federal litigation.'"  *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (quoting *Bush v. Lucas*, 462 U.S. 367, 378 (1983)).

### 4. Special Factors Counselling Hesitation

Before extending a *Bivens* remedy to a new context, *Ziglar* requires courts to consider whether there are "special factors counselling hesitation."  *Ziglar*, 137 S. Ct. at 1857.  "[A] *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'"  *Id.* (quoting *Carlson*, 446 U.S. at 18).  The Supreme Court, however, has not defined the phrase "special factors counselling hesitation."  "The necessary inference, though, is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."  *Id.* at 1857-58.  Thus, a court must ask "who should decide whether to provide for a damages remedy, Congress or the courts?"  *Id.* at 1857.  A "special factor counselling hesitation," is something that "cause[s] a court to hesitate before answering that question in the affirmative."  *Id.* at 1858.  Most often, the answer to this question will be Congress.  *Id.* at 1857.

In a factually analogous case, a court within this District previously found that "the prison workplace context is a special factor precluding extending the *Bivens* remedy."  *Alexander*, 2018 WL 1399302, at *7.  The Supreme Court has long recognized that "courts are ill equipped to deal

with the increasingly urgent problems of prison administration and reform.... Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner v. Safley*, 482 U.S. 78, 84-85 (1987) (internal citations and quotation marks omitted). Additionally, prison administration is "a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint." *Id.* at 85; *see also Ziglar*, 137 S. Ct. at 1857 ("When a party seeks to assert an implied cause of action under the Constitution itself ... separation-of-powers principles are or should be central to the analysis.").

Further, the legislative branch specifically created UNICOR to carry out the work requirement for federal prisoners. *See* 18 U.S.C. §§ 4121-29; 28 C.F.R. § 345.10 ("It is the policy of the Bureau of Prisons to provide work to all inmates (including inmates with a disability who, with or without reasonable accommodations, can perform the essential tasks of the work assignment) confined in a federal institution."). As observed in *Alexander*:

> "There is no statutory requirement that inmates be paid for work in an industrial assignment." 28 C.F.R. § 345.10. Congress has provided for discretionary compensation in 18 U.S.C. § 4126 and has delegated authority to the Attorney General to promulgate rules and regulations to implement those policies. *See* 18 U.S.C. § 4126(c)(4); 28 C.F.R. § 345.10. Congress specifically created a mechanism by which prisoners could be compensated for workplace injuries and illnesses, but did not extend that remedy to other forms of workplace discrimination or constitutional violations. Had Congress intended to include a monetary remedy against federal officers or employees for constitutional violations in the UNICOR implementing statutes, it would have so stated. *See Ziglar*, 137 S. Ct. at 1856 ("When Congress enacts a statute, there are specific procedures and times for considering its terms and the proper means for its enforcement. It is logical, then, to assume that Congress will be explicit if it intends to create a private cause of action.").

2018 WL 1399302, at *7.

Accordingly, in light of *Ziglar* and *Alexander*, this Court finds that it should be left to the legislative and executive branches to determine whether an action for damages for a claim of racial discrimination exists in the prison-workplace environment. Thus, this Court will not extend *Bivens* to this context and will grant Defendant Gonzalez's Motion for Summary Judgment.[2]

### B.     Motion for Default Judgment

Plaintiff also moves for default judgment against Defendant Gonzalez due to his failure to serve a responsive pleading within 60 days. (*See* ECF No. 71 at p. 2). Default is governed by Federal Rule of Civil Procedure 55. Rule 55(a) requires the clerk to enter default against a party who has "failed to plead or otherwise defend" an action. Thereafter, Rule 55(b) allows the Court to enter a judgment by default upon application of a party. *See Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 521 n.1 (3d Cir. 2006) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be entry of default as provided by Rule 55(a)."). Once this procedural hurdle has been met, it is within the discretion of the district court whether to grant a motion for a default judgment. *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000), *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). Here, the Court cannot enter default judgment against Defendant Gonzalez as Plaintiff has not obtained an entry of default. Accordingly, Plaintiff's Motion for Default Judgment is denied.[3]

---

[2] Plaintiff filed a "Motion to Object" (ECF No. 85), which appears to advance the same arguments as his opposition to Plaintiff's Motion for Summary Judgment. For the reasons discussed in this opinion, this motion will be denied.

[3] Plaintiff also filed a "Motion for Relief from Judgment" (ECF No. 82), which appears to reiterate the same arguments advanced in his Motion for Default Judgment. For the reasons discussed in this opinion, this motion will also be denied.

11

## V. CONCLUSION

For the reasons stated above, Defendant Gonzalez's Motion for Summary Judgment is granted and Plaintiff's Motion for Default Judgment is denied.


Dated:  May 16th, 2018                                s/Robert B. Kugler
                                                                         ROBERT B. KUGLER
                                                                         United States District Judge